# Michael *v.* The State, *ex rel.* Welch, et al.

## *Quo Warranto.*

(Decided June 30, 1909.　Rehearing denied Dec. 16, 1909.
50 South. 929.)

1. *Officers; Public Officers; What Constitutes.*—Every one who is appointed to discharge a public duty and receives compensation therefor, in whatever shape, is a public officer, and if the duties be continuing, and defined by rules prescribed by the government, and not by contract, it is difficult to distinguish such a charge or employment from an office, or the person who holds it from an officer.

2. *Same; Office; What Constitutes.*—An office is a public charge or employment comprehending in its terms every charge or employment in which the public is interested.

3. *Quo Warranto; Trial of Title to Office; City Treasurer.*—Where the city by proper ordinance under sections 1067 and 1171, Code 1907, fixed the office of city treasurer, defined his duties, and required him to make bond, etc., such office is a public office, and the person holding it, a public officer, the title to which may be tried by quo warranto proceedings under section 5453, Code 1907.

4. *Municipal Corporation; Organization Under General Law; Powers of Old Body; City Treasurer; Vacancy.*—Construing together sections 1047, 1048, 1067 and 1171, Code 1907, it is held that where a city of less than 6,000 population organized under the municipal code act by passing an ordinance, under section 1048, such city might exercise all powers provided for in the act, unless expressly or plainly prohibited, and that the old council might anticipate the incoming council, by passing an ordinance determining the new officers, under the powers conferred on the council by section 1067 and 1171, Code 1907, and so render valid the appointment of a treasurer pursuant thereto.

5. *Same; Ordinance Determining Officers; Time of Operation; Permanent Ordinance.*—Generally speaking, a permanent statute or ordinance is understood to continue in force until repealed, and this is the obvious sense to be accorded to the word permanent, as used in section 1252, Code 1907, and hence, an ordinance determining officers pursuant to sections 1067 and 1171, Code 1907, which provides that until validly repealed, the officers provided for therein should exist, to be filled by its succeeding administration, carried on its face an intent to form a permanent rule of government until repealed, and it continued in force until repealed.

6. *Same; Ordinances; Passage; Legal Majority of Council.*—Where an ordinance was passed at a meeting of the city council in the absence of a mayor and president pro tempore when only four

members were present and four votes were cast for the ordinance, including the councilman appointed to preside, the fact that the councilman presided in the absence of the other officers, did not strip him of his right to vote, although the mayor could only vote in case of a tie, and the ordinance having received four votes, was passed by a legal majority as contemplated by section 1252, Code 1907.

APPEAL from Marengo Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Quo warranto by the state on the relation of W. H. Welch and others, against George J. Michael, to test his right to hold the office of city treasurer of the city of Demopolis. Judgment for relators and respondent appeals. Affirmed.

WILSON & WILSON, and C. K. ABRAHAM, for appellant.—The Municipal Code Act is a complete law, which by its terms, became operative in September 1908.—*Ward v. State ex rel. Parker*, 45 South. 655; Sec. 1063 and 1068, Code 1907. Under the provisions of said municipal code, the council then in power did not get the authority to use their judgment to say what offices and officers were needful or proper for the government of the city of Demopolis, under sections 1067 and 1171, Code 1907.—*City of St. Paul v. Laidler*, 2 Minn. 190; *Cleveland S. F. Co. v. City of Greenville*, 146 Ala. 559; *Gamble v. Erdreich Bros.*, 143 Ala. 506; 138 Ala. 411; *Mitchell v. Florence D. Co.*, 134 Ala. 392; 136 Ala. 150; 82 Ala. 242; *Ward v. State ex rel. Parker*, *supra*. The power and authority conferred under sections 1067 and 1171, is conferred upon each several council separately and severally, commencing with the council elected Monday (the 3rd Monday) in September 1908, and the power is a continuing one.—28 Cyc. 318; *Horan v. Lane*, 21 Atl. 302; *Columbus Gas L. Co. v. Columbus*, 40 Am. St. Rep. 648; *Corrie v. Cincinnati*, 10 Ohio Dec. 601; 44 N. J. L. 388; 64 Id. 45. Unless

[Michael v. The State, ex rel. Welch, et al.]

the legislature has commuted to a city the power to pass ordinances regulating the office in question, a municipal body in which the appointing power is lodged cannot by appointing for a specific term create a condition that curtails the power of appointment otherwise possessed by its successors.—28 Cyc. 424; 44 N. J. L. 388; 64 N. J. L. 45. All ordinances creating subordinate offices and officers are in their nature temporary, and spend their force and effect at the end of the council passing them unless acted on as continuing in existence.—Secs. 1067, 1171, 1192, and 1227, Code 1907; *Huey v. Jones,* 140 Ala. 479, and authorities supra; 20 A. & E. Ency. of Law, 1140 and 1145; 30 N. J. L. 73. If the ordinance was a permanent one, it was not validly passed under the terms of section 1252, Code 1907.—*State v. Chapman,* 44 Conn. 595; *Lawrence v. Ingersoll,* 88 Tenn. 52. But the ordinance was temporary and not permanent.—*State ex rel. Ellerbee in re Daniel,* 39 Ala. 546; sections of the Code cited supra. The office of treasurer and collector of city water rents in the town of Demopolis, which contains less than 6,000 people, is not a public office.—*State v. Gardner,* 43 Ala. 234. The demurrers raised the point discussed above as do the answers, and should have been sustained.— *Montgomery v. The State,* 107 Ala. 372. At least the burden was on the relators to show that such an office had public functions attached to it.—*Montgomery v. The State, supra.*

PETTUS, JEFFRIES & PETTUS, and HENRY MCDANIEL, for appellee.—The authority to appoint another to office constitutes the appointee a public officer, although he be not required to take an oath and is not allowed a salary.—*State v. Stanley,* 66 N. C. 69; 8 American Reports, 488. A person who, having been appointed or

elected and the title given by law, performs duties imposed upon him by law, is a public officer.—*Bradford v. Justice,* 33 Ga. 332; 4 Wait's Actions & Defences, p. 4, Sec. 4. In general it may be stated that a person elected or appointed, whose duties are fixed by law or ordinance, is a public officer.—1 Modern Law of Munic. Corp's, sec. 155; *People v. Vanwick,* 59 N. Y. S. 134; 55 Pacific, 681, 57 Pacific, 876, 46 North-eastern, 39, 56 North-eastern, 240, 52 North-eastern, 1117, 59 American State Reports, 330. The powers, rights and duties of the City Treasurer is clearly fixed by Sectons 1204 and 1207 of the Code of 1907. Quo warranto is the proper remedy to test the right of appellant to the office of City Treasurer of Demopolis.—Section 5453, Code of 1907; *Echols. v. State, ex rel. Dunbar,* 56 Ala. 131. Councilman Woolf, being a member of the City Council, had a perfect right to vote notwithstanding he was at the time acting as temporary chairman of the meeting of the council.—*Whitney v. Hudson,* 69 Mich. 189; 37 North-Western, 184; 1 Blacks Com. 181, note 478, note; *People ex rel. v. Rector,* 48 Barb. (NY), 603-6; McQuillin Municipal Ord. 162, Sec. 102 and note. By the passage of the ordinance required by Section 1048 of the Code and the adoption by the City Council of Demopolis of the municipal code in March, 1908, the City Council of Demopolis became clothed with all the rights, powers and privileges conferred on city councils by said Code.—Sections 1047, 1048, 1049, Code of 1907; *Ward v. State ex rel. Parker,* 45 So. 655-6. The municipal code is a complete law, which by its terms shall become operative in September, 1908; and the only effect of Section 1048 was to afford an event upon the happening of which it should go into operation in cities so ordaining it in the method stipulated in that Section at an earlier date.—*Ward v. State ex rel. Parker, supra.*

[Michael v. The State, ex rel. Welch, et al.]

The City Council had a perfect right to pass the ordinance of April 2nd, 1909, providing officers for the City of Demopolis—Code of 1907, Sections 1171 and 1067. Said ordinance is of permanent operation, within the meaning of Section 1252 of the Code of 1907, and an ordinance of a "general or permanent nature" within the meaning of Section 1258, and remained in force and effect until repealed.—Sections 1252, and 1258, Code of 1907; *Natl. Bank of Commerce v. Granada*, 44 Fed. 262; *Town of Sapulpa v. Sapulpa Oil Co.*, 97 Pac. 1017; *State ex rel. Bump v. Railroad*, 113 Iowa, 30; *Clark v. City of Janesville* 10 Wis. 178-9; McQuillin Munic. Ord. Section 9; Century Dictionary under "Permanent." An ordinance cannot be amended suspended, or repealed, by a resolution. The act which annuls, modifies or repeals a law should be of equal dignity with the act which enacts or establishes the law. An ordinance can be amended, altered or repealed only by an ordinance sought to be altered, amended, modified or repealed.—McQuillin Munic. ords. p. 7, N. 20; 188 Illinois, 560; 58 North-Eastern, 360; 106 Iowa, 673; 64 Alabama, 571. It is clear that the ordinance attempted to be passed by the City Council on the first Monday night in May, 1909, either repealed, amended, modified or suspended the ordinance of April 2nd, 1909, and if, as we contend, the ordinance of April 2nd, 1909 was "of a permanent operation" within the meaning of Section 1252, and of a "permanent or general nature" within the meaning of Section 1258, it could only be "altered, amended, suspended or repealed" by a vote of the same dignity as was required to enact it, namely, by a vote of a majority of the members elected to the council, including the mayor.—See Ordinances set out in Statement of Case, See sections 1252 and 1258, Code of 1907, See Also, Authorities, supra.

DENSON, J.—This is an action under the statute (Code 1907, § 5453), brought in the name of the state, on the relation of W. H. Welch and others, against George J. Michael, to oust him from the office of treasurer of the city of Demopolis, and to declare and fix the right of the relator to said office. The circuit court granted the relief prayed, and the respondent has appealed.

Demopolis, a city of less than 6,000 but more than 2,000 inhabitants, was incorporated by an act of the General Assembly approved December 9, 1896.—Acts 1896-97, p. 161. By section 3 of the charter, it was provided that the "government" of the city should consist of a mayor and six councilmen, to be elected on the first Monday in May, 1897, and on the 1st day of May every two years thereafter. By section 17 of the charter it was provided that the board of mayor and councilmen might appoint a clerk, a treasurer, a tax assessor a tax collector, a marshal, a city attorney and such other officers as might be deemed necessary for the good government of the city. It was also provided by the charter that the board should prescribe the duties and liabilities of such officers, and fix their compensation. The charter further provided that, before entering upon their respective duties, the mayor, marshal, tax collector, tax assessor, and treasurer should enter into bond, etc. The power was also given the board to remove the designated officers at pleasure—"the mayor excepted." It was further provided that the officers should be appointed at the first regular meeting of the newly elected board, "or as soon thereafter as practicable." Section 18 of the charter provided that the treasurer should receive commissions on the receipts and disbursements, and fixed the amount thereof; and section 43 provided that the treasurer should publish semiannual state-

[Michael v. The State, ex rel. Welch, et al.]

ments of the receipts and disbursements of the "city government."

The record shows that the office of treasurer was established by the "city government," as provided by the charter, and that the respondent was the incumbent thereof, holding it under appointment by the board of mayor and councilmen elected on the first Monday in May, 1907, and that under the law his term of office did not expire until the first Monday in May, 1909, which was the date of the expiration of the terms of the mayor and councilmen by whom he was appointed. The record further shows that on the 13th day of March, 1908, the city council (as authorized by section 199 of the Municipal Code law [Acts 1907, p. 892; Code, 1907, § 1048]) passed an ordinance whereby the city government became organized under the provisions of that law. It also appears from the record that on the 2d day of April, 1909, at a regular meeting of the city council, an ordinance was adopted, entitled "An ordinance to provide officers and employes for the city of Demopolis, prescribe how they shall be appointed, and fix their term of office and compensation." This ordinance provided that "the officers and employes of the city of Demopolis, not otherwise prescribed by law, should be tax collector, tax assessor, collector of water rents, chief of police, chief of fire department; superintendent of waterworks, two policemen, health officers, sanitary officers, city attorney, and city treasurer." The ordinance had been introduced at a previous meeting of the council held in October, 1908. It provided that each of said officers should be appointed by the mayor as soon after he should take the oath of office as practicable, and that the tenure, or term of office of each should be coextensive with that of the mayor conferring the appointment, unless he should be sooner removed

as provided, and until his successor was appointed and qualified. The ordinance has a repealing clause, whereby all laws and ordinances in conflict with its provisions are repealed. This ordinance was duly published as required by law.

The information shows that by virtue of said ordinance the mayor, on the 3d day of May, 1909, and after his installation in office, appointed relator to the office of treasurer; that he qualified by taking the required oath and making the required bond. Subsequent to the appointment of the relator by the mayor, but during the meeting of the council at which the mayor was inducted into office, there was introduced an ordinance prescribing the same officers and employes for the town as had been fixed in the ordinance of April 2d, but providing that they should be elected by the city council of Demopolis, and as soon after the members of said council should take the oath of office as practicable, with the reservation that the city health officer and sanitary officer provided for in the ordinance should be appointed by the mayor. It was provided that the ordinance should go into effect immediately upon its passage, and should be and remain of effect only until the first Monday in October, 1910 and until the successors of such officers should qualify. The ordinance purported to repeal all ordinances and resolutions and parts of ordinances and resolutions in conflict therewith. At the meeting at which the ordinance was passed there were present the newly elected mayor and the five newly elected councilmen. Three of the councilmen voted for the passage of the ordinance, and two against it. This ordinance has never been published. After the passage of the ordinance, but at the same meeting of the council, as the record shows, George J. Michael, the incumbent of the office of treasurer, was elected to that office

[Michael v. The State, ex rel. Welch, et al.]

by a majority vote of the councilmen, three constituting a majority.

The first question presented for determination is one preliminary to the main issues involved. It is: Is the office of city treasurer of Demopolis a "public civil office," within the meaning of section 5453 of the Code of 1907, providing this action in the nature of quo warranto for ousting an usurper of a public civil office? In *Henly v. Lynne,* 5 Bing. 91, Lord Chief Justice Best, defining who is a public officer, said: "Every one who is appointed to discharge a public duty, and receives compensation, in whatever shape, from the crown or otherwise, is a public officer."—See, also, Bac. Abr. tit. "Offices and Officers," A. Chief Justice Marshall, in *United States v. Maurin,* 2 Brock 102, said: "If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, it seems very difficult to distinguish such a charge or employment from an office, or the person who holds it from an officer." An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public is interested.—*Shelby v. Alcorn,* 36 Miss 273, 72 Am. Dec. 169; *People v. Hayes,* 7 How. Prac. (N. Y.) 248; *State v. Valle,* 41 Mo. 29; 2 Cow. (N. Y.) 13, 29, note "b"; *People v. Bedell,* 2 Hill (N. Y.) 196; *People v. Lee,* 28 Hun. (N. Y.) 469; Carthew's R. 479. It would seem that these definitions should suffice to show that the office in question is a public civil office within the purview of the statute.

But the statutes (Code 1907, §§ 1069, 1171), it seems, should remove any doubt on the subject. They provide that "the council shall elect a clerk, * * * and may determine by ordinance the other officers of such city or town, their salary, the manner of their election and the term of office." Both ordinances if valid, fix the office

of treasurer, define his duties, require him to make bond, etc. If these things do not make an office, and constitute the person appointed or elected to fill it a public officer, within the meaning of the statute, then it would be hard to conceive of a case within the statute where it has not expressly declared the offices and officers who come within its terms. The court concludes that the office in question is a public civil office and that the title thereto may be tried by quo warranto proceedings under the statute.

The next and principal contention of respondent is that, notwithstanding the "city government" of Demopolis—in virtue of the adoption of the ordinance of March 13, 1908, by its "governing body," in pursuance of section 199 of the Municipal Code act (Code 1907, § 1048)—became duly organized under the provisions of that act, yet neither the ordinance, nor any of the provisions of the act by the ordinance made applicable, conferred upon the then existing "governing body" of the city the power to determine the officers of the city. In other words, that the power conferred upon the "council" by sections 17 and 33 of the act (sections 1067, 1171, of the Code of 1907), could be exercised only by the council elected on the third Monday in September, 1908, and inducted into office on the 3d day of May, 1909, and, therefore that the ordinance of April 2, 1909, under which the relator received his appointment, is void.

Section 2 of the municipal act (Code 1907, § 1047), after fixing the day for the election of city and town officers, etc., continues: "Until the officers elected at the general municipal election on the third Monday in September, 1908, shall have assumed their duties of office, the corporate organization of the several cities and towns of the state shall be and remain as now provided

by law, and such municipal corporations shall have the
powers and exercise the authority herein conferred, un-
less prohibited in express terms by the respective char-
ters of the several cities and towns, or when, by their
nature, they may not be exercised by such municipalities
as now organized." This section of the act, of itself,
conferred no right or power upon the old council to
adopt an ordinance determining the officers of the city,
as provided by sections 17, 33, of the act (Code 1907, §§
1067, 1171) ; but in this case we must read section 199
of the act (Code 1907, § 1048) in connection with sec-
tion 2 (Code 1907, § 1047) as a proviso thereto.—*Ward
v. State ex rel. Parker,* 154 Ala. 227, 45 South. 655. We
said, in the case just cited: "The Municipal Code act
is a complete law, which by its terms shall become oper-
ative in September, 1908; and the only effect of section
199 was to afford an event upon the happening of which
it should go into operation in the town or city so or-
daining in the method stipulated in that section at an
earlier date. Section 199 should be read as a proviso
to section 2 of the Municipal Code act; and, when so
read, the provision of the latter section that the corpo-
rate organizations 'shall be and remain as now provided
by law' is qualified to the extent section 199 prescribed."

It will be observed that in the codification of the act
section 2 was made section 1047, and that section 199
immediately follows, as section 1048 of the Code of
1907. It is well understood that the event referred to
was the passage of the ordinance, provided for in sec-
tion 199, to bring the city government at once under the
provisions of the act. So it would seem clear that, after
the passage of the ordinance of March 13, 1908, the city
government of Demopolis became organized under the
provisions of the municipal act. But according to the
terms of that part of section 2, herein above set out, its

corporate organization—mayor, six councilmen, and subordinate officers—remained the same until their successors were elected and qualified. This is emphasized by section 199, wherein it is provided that "the then existing governing body (that existing at time of adoption of the ordinance) shall proceed to elect such other officers as are required by this act and not provided by the charter of such city or town," etc.—*Ward v. State ex rel. Parker, supra.*

It is difficult to see what advantage could inure to a municipal corporation from organizing its city government "at once" under the provisions of section 199 of the act, if during the time intervening the date of such organization and the installation of the officers elected on the third Monday of September, 1908, it could exercise none of the powers specified in the act. The court is of the opinion that, unless expressly or by plain implication prohibited, municipal corporations, after coming in under section 199, might exercise all the powers provided for in the act.

The question then arises: Was the council clothed with the power to pass the ordinance of April 2, 1909, determining the officers of the city? The court is not dealing with the question of the propriety of the old council's anticipating the incoming council in passing the ordinance, being concerned merely with the legal phase of the question. Section 1067 of the Code of 1907 (a part of section 17 of the act) provides: "in cities having a population of less than six thousand and in towns, the council shall elect a clerk, and may elect a recorder, and fix their salary and term of office, and may determine by ordinance the other officers of such city or town, their salary, the manner of their election, and the term of office, but there shall be no recorder in towns. ' Section 1171 of the Code of 1907 (section 33 of the act)

provides: "Cities and towns may, except as aforesaid, by ordinance, provide for the election at any regular municipal election, or for the appointment, of such officers as are deemed needful or proper for the good government of the city or town, and the due exercise of its corporate powers, fix their terms of office, fix their compensation, and prescribe the duties of such officers, their liabilities and powers, and require them to give bond in such sum and to be conditioned and approved as the council may prescribe."

The charter of Demopolis provided that the council might appoint a clerk and a treasurer (appointees) at the time the city government became organized under section 199 of the act (section 1047 of the Code of 1907). We have seen that section 1067 requires the election of a clerk by the council, and that the clerk is the only officer required by the act to be so elected; so the "old council" was without authority to pass an ordinance in regard to the office of clerk, and it did not attempt it. But the two sections, 1067 and 1171, both provide that the council may determine by ordinance the other officers of such town. And we cannot see that either of these sections prohibits the old council from passing such an ordinance, albeit such an ordinance passed by the old council might be repealed by the "new council." If, however, by any sort of strained construction, such prohibition might be inferred from the language of section 1067, yet the language in which section 1171, is couched certainly affords no ground for such an inference. Harking back to section 2 of the act (sections 1047, Code 1907) the portion of it hereinbefore set out, and construing it in connection with section 199 ( section 1048), its proviso, it would seem that the "old council" was fully warranted in passing the ordinance of April 2, 1909. We have been unable, by fair construc-

tion, to find in the act any prohibition of, or limitation upon, the right of the old council to pass said ordinance, and we conclude that it might do so. Of course, it could not appoint the officers for the incoming council, and it did not attempt to do this.

Section 1252 of the Code of 1907 (section 81 of the act) provides that "no ordinance or resolution intended to be of permanent operation shall become a law unless on its final passage by a majority of the members elected to said council, including the mayor of cities of less than six thousand inhabitants, and in towns shall vote in its favor." The ordinance of April 2, 1909, in effect provided that, until validly repealed, the offices in said ordinance provided for should exist, to be filled by each succeeding administration, and on its face carries the legislative intention that it should form a permanent rule of government until repealed. "Generally speaking, a permanent statute (ordinance) is one which is understood to continue in force till its repeal."—*Palcher v. United State,* (C. C.) 11 Fed. 47; *Town v. Sapulpa,* (Okl.) 97 Pac. 1007; McQuillan on Ord. § 9. It is obvious that this is the sense which should be accorded to the word "permanent" as used by the Legislature in section 1252 of the Code of 1907. It is also clear that until repealed the ordinance in question would undoubtedly continue in force.

At the meeting of the council at which the ordinance of April 2, 1909, was adopted, the mayor, the chairman pro tempore of the council, and one other councilman, were absent, leaving only four members of the council present and participating in the meeting. One of the councilmen present was appointed (Code 1907, § 1088) to preside at the meeting. On the passage of the ordinance four votes were cast therefor, including that of the councilman presiding. It is now insisted that as

the mayor, if he had been present, could not have cast a vote except upon a tie (Code 1907, § 1068), the councilman appointed to preside in the stead of the mayor was not entitled to vote upon the passage of the ordinance, and, therefore, that the ordinance received only three legal votes, and, on that account, failed of legal passage. The councilman appointed to preside at the meeting of the council, being a member of the body and entitled to vote, was not, as an incident of such appointment to preside, stripped of the right to vote upon the passage of the ordinance.—McQuillan on Mun. Ord. § 102. It will be borne in mind that this record simply shows that the mayor and the chairman pro tempore were absent from the meeting, and that at that meeting Councilman S. G. Wolf "was appointed and acted as chairman pro tempore and presided over said meeting, discharging the functions of the mayor." We think this differentiates the present case from that of *Cline v. Seattle,* 13 Wash 444, 43 Pac. 367, and leaves that case out of point.

It must follow, from the foregoing considerations, that the ordinance of April 2, 1909, was adopted in the legitimate exercise of the powers conferred upon the "old council" by the Municipal Code law legitimately adopted.—Gen. Acts 1907, p. 790. The ordinance being valid, it must follow that the relator's appointment thereunder was legal, and gave him the right to the office of treasurer, unless there was a repeal of it by some ordinance adopted in conformity to law.

The ordinance of May 3, 1909, purports to repeal the ordinance of April 2, 1909; but, in consonance with the reasons stated for holding the latter ordinance to be of a permanent nature, we must hold that it was the intention of the council, in their efforts to pass the former, that it should be of "permanent operation." It did not,

however, receive the votes of a majority of the members, including the mayor, elected to the council, as required by section 1252 of the Code of 1907, and, therefore never ripened into a valid ordinance.

Answers 1 and 2 are inapt, in this action, and the demurrers thereto were properly sustained.—*West End v. State ex. rel.*, 138 Ala. 295, 56 South. 423.

The other pleas and answers sought to set up in defense matters which have been covered by our general discussion of the case; and according to the holdings announced in this opinion the said pleas and answers were subject to the demurrers filed thereto, and the court properly sustained the demurrers.

The answer, as last amended, was subject to demurrer, and the court cannot be put in error for sustaining the objection made by the relator to the filing of the same.

The evidence is without conflict, and proves the relator's case in all its essential aspects. The judgment of the lower court must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.